

Louis V. Fasulo, Esq.– NY & NJ
Samuel M. Braverman, Esq.– NY & NJ
Charles Di Maggio, Esq.– NY & CO

www.FBDMLaw.com
SBraverman@fbdmlaw.com

March 17, 2014

**Via ECF and Email**
The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
40 Foley Square, Room 9B
New York, New York 10007

Re:     *United States v. Francisco Santibanez*
        13 Cr. 912 (RJS)

Dear Judge Sullivan:

     I write in response to this Court's Order dated March 13, 2014, on whether I may continue representing Mr. Santibanez despite the recent refusal of Victor Barcelo to waive any potential conflicts of interests. I respectfully suggest that I may continue representing Mr. Santibanez in his criminal case because, although there exists a potential conflict of interest, that conflict actually does not exist, nor should it be imputed to myself or my associate, Joseph Vento. For the following reasons, I should not be disqualified from representing Mr. Santibanez.

     It is the Government's position that my present law partner Louis Fasulo's prior representation of Mr. Barcelo in the matter *United States v. Victor Barcelo*, 13 Cr 38 (RJS), creates an conflict of interest regarding Mr. Barcelo that bars my representation of Mr. Santibanez in the absence of an express waiver by Mr. Barcelo.[1] In support of its position, the Government primarily cites the Second Circuit case *United States v. Stein*, 410 F.Supp. 2d 316 (S.D.N.Y. 2006). Yet the Government's reliance on *Stein* is misplaced as there isn't the bright-line rule governing this situation in *Stein* as the Government would have this Court believe.

     In *Stein*, the Second Circuit stated that an attorney's conflict, while ordinarily imputed to his firm, "may be rebutted in some cases where the firm has instituted 'practices and structures ... sufficient to avoid disqualifying taint,' including 'the intentional construction of a 'Chinese

---

[1] This matter was scheduled for a hearing pursuant to *United States v. Curcio*, 680 F2d 881 (2nd Cir. 1982), on Wednesday, March 12, 2012. It was cancelled at the last minute for reasons unknown to this writer. However, Walter Mack, Esq., counsel for Mr. Barcelo, stated to the Government and to me at that time that his client will not waive the apparent conflict of interest. Mr. Santibanez indicated to me at that time that he wished me to continue to represent him in this matter. Both of these positions were conveyed to the Court staff remaining in the courtroom.

Wall,' or [other] *de facto* separation that effectively protects against any sharing of confidential information.'" *Stein*, at 325 (quoting *Hempstead Video, Inc. v Inc. Vil. of Val. Stream*, 409 F.3d 127, 133 (2d Cir. 2005)). The Court went on to acknowledge that although some courts treat this presumption as irrebuttable, the Second Circuit tends to agree with the "strong trend…toward allowing the presumption of confidence sharing within a firm to be rebutted." *Stein*, at 325.

The New York Court of Appeals has followed a similar train of thought, holding that a "per se rule of disqualification…is unnecessarily preclusive because it disqualifies all members of a law firm indiscriminately, whether or not they share knowledge of [a] former client's confidences and secrets," and further that such a rule, "conflicts with public policies favoring client choice and [unnecessarily] restricts an attorney's ability to practice." *Kassis v. Teacher's Ins. and Annuity Ass'n*, 93 N.Y.2d 611, 616-17 (1999); (see also *Nimkoff v Nimkoff*, 18 A.D.3d 344, 345-46 (1st Dept. 2005) ("Imputed disqualification…is not an irrebuttable presumption"). Thus, "where one attorney is disqualified as a result of having acquired confidential client information at a former law firm, the presumption that the entirety of the attorney's current firm must be disqualified may be rebutted," and in such a situation, "a 'Chinese wall' around the disqualified lawyer would be sufficient to avoid firm disqualification." *Kassis,* at 617.

Furthermore "no presumption of disqualification will arise if either the moving party fails to make any showing of a risk that the attorney changing firms acquired any client confidences in the prior employment [citation omitted] or the nonmoving party disproves that the attorney had any opportunity to acquire confidential information in the former employment" *Nimkoff,* 18 A.D.3d at 345-46 (citing *Kassis,* at 617). Upon its claim of a conflict under RPC 1.9, the Government or Mr. Barcelo should be required to make a showing that Mr. Barcelo's confidential information has been actually communicated to me or to Mr. Vento, despite our affirmation to this Court that it has not.

As discussed in my letter of March 11, 2014 to this Court, Mr. Fasulo was appointed to represent Mr. Barcelo in 2012, before he and I became partners in January, 2013. Mr. Barcelo has claimed that almost all subsequent communication between him and his counsel's office was with Jennie Carmona, a paralegal with Mr. Fasulo's prior firm Fasulo Shalley & DiMaggio, LLP.[2] Ms. Carmona is not an employee of my firm and does no work for me on any matter whatsoever. Aaron Goldsmith, Esq. is not an employee of my firm and does not work for me on any criminal matter (he continues to do some commercial real estate work for Charles Di Maggio, Esq, another partner of the firm.) As previously stated in my letter of March 11, 2014 to this Court, a physical barrier has been installed in my office between Louis Fasulo, Joshua MacDonald, Aaron Goldsmith, Jennie Carmona, and the Barcelo file on one side, and myself, Joseph Vento, and the Santibanez file on the other. By constructing a firewall and screening Mr. Fasulo and Mr. MacDonald from working on Mr. Santibanez's case and prohibiting Mr. Vento or myself to have any access to any part of Mr. Barcelo's file, Mr. Barcelo's confidential information will be protected and no conflict of interest will hinder either his or Mr. Santibanez's rights under our Constitution. Further, this case does not fall within the realm of *United States* v. *Schwarz,* 283 F.3d 76 (2d Cir. 2002) because Mr. Fasulo and I will not be simultaneously representing Mr. Barcelo and Mr. Santibanez. It would be no different than if Mr. Fasulo were deceased and thus equally incapable of discussing information from his prior representation of Mr. Barcelo.

---

[2] ECF 26, *United States v. Barcelo*, 13 Cr 38 (RJS), Order of March 1, 2013, incorporating letter from Victor Barcelo, dated February 25, 2013.

Moreover, there is a diminished danger to Mr. Barcelo's interests because of events in his case prior to my representation of Mr. Santibanez. Mr. Barcelo has already waived his attorney-client confidentiality by his prior claim of ineffective counsel by Mr. Fasulo. This Court, by Order dated August 7, 2013, held that Mr. Barcelo has waived his attorney-client privilege as to communications between Mr. Barcelo and members of Mr. Fasulo's staff. Pursuant to the Government's public filing of exhibits in support of its submission in opposition to Mr. Barcelo's motion to dismiss, it attached affidavits from Mr. Fasulo, Ms. Carmona, and Mr. Goldsmith. Mr. Barcelo also made a written submission to this Court about his relationship with Mr. Fasulo and the substance of their conversations in which he disclosed his communications with Mr. Fasulo. Further, upon information and belief the source of which is the Government's submission and exhibits, Mr. Barcelo met with the Government and proffered to the Government information about his criminal activity in an effort to obtain a 5K motion, presumably reciting anything that he told to Mr. Fasulo or his employees in confidence since he was under an agreement to be truthful and complete in his recitation of his criminal past.[3] Finally, Mr. Barcelo (with Walter Mack, Esq. as trial counsel), went to trial, testified in his own defense, and was convicted by a jury of his peers of Conspiracy to Distribute Narcotics. If in the unlikely event that Mr. Barcelo were to testify against Mr. Santibanez in an effort to obtain FRCrP Rule 35 relief, Mr. Barcelo's own trial testimony and proffer notes would be turned over to Mr. Santibanez's defense counsel as 3500 material. Such disclosure would undoubtedly include any and all information conceivably relayed to Mr. Fasulo or his prior firm.

The Second Circuit has stated that the "disqualification remedy, [is meant] 'to enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information.'"*Silver Chrysler Plymouth, Inc. v Chrysler Motors Corp.*, 518 F2d 751, 754 (2d Cir. 1975) (quoting *Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268, 271 (2d Cir. 1975). There is no danger here that any lawyer will fail to discharge such duty of fidelity to his client, nor is there any danger of confidential information being used against the client-source of that information.

It is important to note that whatever potential conflict exists is waivable by this Court. Whether a particular conflict is waivable is a question this Court must answer utilizing several factors, including:

> "(1) whether disqualifying the defendant's chosen counsel would create "real prejudice" to the defendant based on the length of the representation and/or counsel's familiarity with the case;
>
> (2) whether there is a possibility that the attorney could be called as a witness at the defendant's trial or implicated in the defendant's alleged crimes;
>
> (3) whether the continued representation would conflict with the attorney's own personal financial or liberty interests, as opposed to the interests of a current or former client;
>
> (4) whether, if the conflict concerns the interests of another client, the attorney's relationship with the other client is continuing or has been terminated;
>
> (5) whether any other current or former client affected by the conflict has initiated or joined in the motion to disqualify defendant's chosen counsel; and

---

[3] See ECF 50, Government's Memorandum in Opposition (Exhibits 1, 2, and 3), *United States v. Barcelo*, 13 Cr 38 (RJS).

(6) the availability of measures that might limit the dangers posed by the conflict, such as restricting an attorney's cross-examination of a former client."

*Stein*, at 328.

This Court should also consider other factors such as the client's motive in refusing to waive the potential conflict. (*See Kassis,* at 616 ("consideration must be given to the significant hardship that might result to one client as a result of 'abusive invocation [of the rule] purely to seek tactical disadvantages in a lawsuit.'").) It is clear that Mr. Barcelo has no positive impression of Mr. Fasulo. To the extent that his choice to withhold his waiver is the product of his attempt to "get even" with Mr. Fasulo cannot be known by anyone but Mr. Barcelo. I would respectfully suggest that Mr. Barcelo's refusal to waive is founded upon nothing more than vindictiveness. Mr. Barcelo testified at his own trial and lost, so the idea that he would come before this Court seeking Rule 35 relief by testifying against Mr. Santibanez is unlikely since he already testified under oath that he was not guilty of the act that the Government now claims is the act which caused the conflict. It would thus seem that Mr. Barcelo is attempting to use the attorney-client privilege as "a shield and a sword," which, of course, is impermissible. *See In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987)("a defendant may not use the privilege to…disclose some selected communications for self-serving purposes"); *see also Clark v. United States,* 289 U.S. 1, 15 (1933) ("The privilege takes flight if the relation is abused.").

Furthermore, my proposed representation of Mr. Santibanez is completely within the confines of the American Bar Association Model Rules of Professional Conduct. *See* Rule 1.10(a)(2), Cmt. 3 ("The rule in paragraph (a) does not prohibit representation when neither questions of client loyalty nor protection of confidential information are presented. The rule also removes imputation without requiring the informed written consent of the affected client where the firm engages in proper screening methods").

The present potential conflict will not affect the legal rights of either Mr. Barcelo or Mr. Santibanez. Whatever confidential information Mr. Barcelo shared with Mr. Fasulo has not been shared with me, but whatever information does exists has already been exposed by Mr. Barcelo himself by his actions, and the Government's filings. No private communications of Mr. Barcelo to Mr. Fasulo (or Ms. Carmona or Mr. MacDonald or Mr. Goldsmith) have been shared with the defense team for Mr. Santibanez, nor will they, nor should they be imputed to the rest of our law firm if the proper precautionary measures are set into place, and which have already been put in place. Hence, I would respectfully request that this Court allow my proposed representation of Mr. Santibanez in his criminal case.

                                                        Respectfully Submitted,

                                                         /s/ Sam Braverman

                                                      Sam Braverman
                                                      Fasulo Braverman & Di Maggio, LLP
                                                      225 Broadway, Suite 715
                                                      New York, New York 10007
                                                      Tel: (212) 566-6213

Cc:     Walter Mack, Esq. (by ECF)
          AUSA Emil Bove (by ECF)