UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

FRANCISCO SANTIBANEZ,

                Defendant.

No. 13-cr-912 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Before the Court is a request by Defendant Francisco Santibanez for compassionate release under the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), in light of the COVID-19 pandemic. (Doc. No. 83.) The government opposes Santibanez's request. (Doc. No. 85.) Although it is undisputed that Santibanez has underlying medical conditions that put him at a higher risk of death or serious health consequences should he contract COVID-19, the reasons supporting his 156-month sentence – of which he has served slightly less than half – weigh strongly against a compassionate release at this time. Accordingly, Santibanez motion is DENIED.

## I. BACKGROUND

On November 21, 2013, Santibanez was charged with participating in a conspiracy to distribute cocaine, heroin, and methamphetamine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). (Presentence Investigation Report ("PSR") ¶¶ 1–2.) Santibanez was a midlevel player in a sophisticated drug trafficking organization that imported drugs from Mexico into the United States, and was responsible for coordinating the receipt and delivery of drugs and money across the country. (*Id.* ¶¶ 6, 7; *see also* Doc. No. 68 at 21.) On August 7, 2014, Santibanez pleaded guilty as charged. (Doc. No. 33.)

At the sentencing hearing held on September 2, 2015, the Court calculated Santibanez's Guidelines range to be 135 to 168 months' imprisonment, based on a drug quantity of 48 kilograms of cocaine, 9.5 kilograms of methamphetamine, and 8 kilograms of heroin, which the Court considered to be a "highly conservative estimate" of the drug quantities actually involved in this case. (Doc. No. 68 at 19.)  The Court then sentenced Santibanez within that range to 156 months' imprisonment. (*Id*. at 31.)  The Court noted that while it had contemplated imposing a fifteen-year-sentence in light of Santibanez's sophistication and knowledge of the narcotics activity (*id.* at 20–21), it ultimately determined that a thirteen-year sentence (156 months) was sufficient in light of Santibanez's "age and health" and "exemplary" behavior while incarcerated (*id.* at 29–30). Santibanez, who is incarcerated at the United States Penitentiary in Lompoc, California ("USP Lompoc"), has served approximately half of his sentence thus far, and is expected to be released in February 2025.

On April 24, 2020, Santibanez, through counsel, submitted a request for compassionate release to the Warden. (Doc. Nos. 83 at 3–4, 83-1.)  The request was denied on or about May 18, 2020. (Doc. No. 83-2.)  Then, on June 1, 2020, Santibanez moved the Court to reduce his sentence to time served because of the current COVID-19 pandemic. (Doc. No. 83.)  He contends that he is at high risk of death or serious illness if he contracts COVID-19 because of his "chronic coronary disease[,] for which he suffered a cardiac arrest and already experienced bypass surgery and carries arteriol stents," and "his chronic hypertension and hyperlipidemia and hypothyroidism." (*Id.* at 1.) The government opposes his request. (Doc. No. 85.)  Although the government acknowledges that Santibanez's health conditions do put him at higher risk for complications from COVID-19, it argues that the Court should deny Santibanez's motion because the BOP has taken steps to minimize the danger of COVID-19 to inmates like Santibanez (*id.* at 4–5) and conditions in USP Lompoc have

improved (*id.* at 5), and because the sentencing factors in 18 U.S.C. § 3553(a) weigh against release (*id.* at 1).

## II. LEGAL STANDARD

The law is clear that a court "may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Roberts*, No. 18-cr-528-5 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks omitted).  Section 3582(c)(1)(A) provides one such exception, often referred to as "compassionate release."  Through that provision, a court may "reduce" a defendant's sentence where "extraordinary and compelling reasons warrant such a reduction," and such relief would be consistent with both the factors in 18 U.S.C. § 3553(a) and "applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A). However, a court may do so only "upon motion of the Director of the Bureau of Prisons" or "upon a motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

## III. DISCUSSION

As an initial matter, the Court first must address whether Santibanez has exhausted administrative remedies.  Santibanez contends that he exhausted his administrative remedies because he waited 30 days after the Warden's denial of his motion for compassionate release to petition the Court.  (Doc. No. 83 at 4-5.)  Although there is at least some authority to suggest that, in light of the Warden's denial, Santibanez had *not* exhausted his administrative remedies, and instead was required to "complete each of the two levels of appeal that follow the warden's denial," *United States v. Gioeli*, No. 08-cr-240 (BMC), 2020 WL 2572191, at *2 (E.D.N.Y. May 21, 2020), the government does not contest exhaustion here.  The Court agrees with a number of courts in this Circuit that have found the

exhaustion requirement to be a "claim processing" rule rather than a jurisdictional bar.  *See, e.g.*, *United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); *United States v. Knox*, No. 15-cr-445-12, Dkt. No. 1086 (S.D.N.Y. Apr. 10, 2020); *see also United States v. Fernandez*, No. 12-cr-445-1 (JMF), 2020 WL 2731236, at *1 (S.D.N.Y. May 26, 2020).  As such, the government can waive – and in this case, has waived – the affirmative defense of exhaustion.  Therefore, the Court proceeds to address Santibanez's petition on the merits.

Here, Santibanez maintains that the COVID-19 pandemic, together with his heightened risk from his underlying health conditions, merits a compassionate release.  The Court disagrees.

First, while neither party disputes that Santibanez has serious underlying health conditions, there is nothing in the record suggesting that Santibanez has been "unable to care for himself" or that he has "been neglected by [USP Lompoc] medical personnel."  *See United States v. Hasan-Hafez*, No. 16-cr-221-2 (KPF), 2020 WL 2836782, at *4 (S.D.N.Y. June 1, 2020).  Moreover, the Court is "mindful that . . . federal detention facilities are undertaking steps to minimize the danger COVID-19 poses to inmates," *United States v. Garcia*, No. 16-cr-719-2 (RJS), 2020 WL 2539078, at *2 (S.D.N.Y. May 19, 2020), and that "[w]hile USP Lompoc has suffered a significant number of COVID-19 infections, COVID-19 case numbers have fallen substantially," *United States v. Kauwe*, No. 10-cr-44 (MMD), 2020 WL 2926460, at *3 (D. Nev. June 3, 2020) (internal quotation marks and brackets omitted).

Second, even if Santibanez could make this threshold showing, his motion would still fail, as an assessment of the § 3553(a) factors demonstrates that releasing Santibanez would "undermine the goals of the original sentence."  *United States v. Ebbers*, 432 F. Supp. 3d 421, 431 (S.D.N.Y. 2020); *see also United States v. Walter*, No. 18-cr-834-6, 2020 WL 1892063, at *2–3 (S.D.N.Y. Apr. 16, 2020) (denying compassionate release despite the presence of "extraordinary and compelling

reasons" because, among other things, the § 3553(a) factors did not favor early release); *United States v. Butler*, No. 19-cr-834-10 (PAE), 2020 WL 1689778, at *2–3 (S.D.N.Y. Apr. 7, 2020) (same).  In particular, (1) "the nature and circumstances of the offense," (2) "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct" all outweigh the facts that might otherwise support Santibanez's release.  *See* 18 U.S.C. § 3553(a).

In sentencing Santibanez to 156 months' imprisonment, the Court noted that "anything lower . . . would be unwarranted in light of the true seriousness of this offense."  (Doc. No. 68 at 30.)  This remains true today.  Santibanez was a knowing participant in an extensive drug network.  While Santibanez attempts to paint himself as unsophisticated (*see, e.g.*, Doc. No. 83 at 3), the Court has previously emphasized that Santibanez was, in fact, quite "sophisticated" and "not some illiterate laborer . . . dabbling in [the drug] business because he can't make ends meet" (Doc. No. 68 at 20–21).  And although Santibanez contends that his actions were "non-violent" (Doc. No. 83 at 24), the Court aptly noted that the drugs at issue here "cripple individuals" and "destroy[] families" and "whole communities" (Doc. No. 68 at 28).

Finally, while the Court applauds Santibanez's commendable disciplinary record since his arrest in 2014, just as it did at the time of his sentencing (*see* Doc. No. 68 at 29–30), the fact remains that releasing Santibanez before he has completed even half of his sentence would not promote respect for the law, and would undermine the deterrent effect of his sentence.  Thus, although the Court is sympathetic to Santibanez's health concerns and gratified by his positive steps toward rehabilitation while in custody, it finds that it would be improper to grant compassionate release in these circumstances.  *See Ebbers*, 432 F. Supp. 3d at 431 (acknowledging that compassionate release should

5

not "undermine the goals of the original sentence").

Of course, Santibanez may still pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant that relief, however, is exclusively reserved to the discretion of the BOP.

## IV. CONCLUSION

For the reasons set forth above, Garcia's motion for compassionate release is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at document number 83.

SO ORDERED.

Dated:   July 2, 2020
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation